**L.D. MATTSON, INC., an Oregon corporation, and Oregon–Columbia Chapter of the Associated General Contractors of America, Inc., an Oregon non-profit corporation, Plaintiffs,**

v.

**MULTNOMAH COUNTY, a political subdivision of the State of Oregon and Marion Construction Company, an Oregon corporation, Defendants.**

Civ. No. 88–414–RE.

United States District Court,
D. Oregon.

Nov. 22, 1988.

Bruce C. Hamlin, Richard N. Van Cleave, Spears, Lubersky, Bledsoe, Anderson, Young & Hilliard, Portland, Or., for plaintiffs.

Laurence Kressel, County Counsel, John L. DuBay, Asst. County Counsel, Portland, Or., for Multnomah County.

Joseph A. Yazbeck, Jr., F. Gordon Allen, Allen, Kilmer, Schrader, Yazbeck & Chenoweth, P.C., Portland, Or., for Marion Const.

OPINION

REDDEN, District Judge.

In this civil rights action, plaintiffs L.D. Mattson, Inc. and the Oregon–Columbia Chapter of the Associated General Contractors of America, Inc. (OAGC) challenge the constitutionality of defendant Multnomah County's affirmative action program for public contracting.

Plaintiffs move for partial summary judgment and seek a declaration that the program is unconstitutional and an injunction barring further implementation of the program. Defendant moves for summary judgment and for a stay pending the outcome of *City of Richmond v. J.A. Croson,* — U.S. ——, 108 S.Ct. 1010, 98 L.Ed.2d 976 (1988). Finally, the State of Oregon, urging the stay, has filed an amicus curiae brief, to which plaintiffs have responded.

I grant plaintiffs' motion for partial summary judgment, and deny defendant's motions for summary judgment and stay.

My May 6, 1988 Opinion in this case sets out the factual background of this action.

A. *The Cross Motions for Summary Judgment*

The parties agree that the program establishes racial and gender preferences. The racial preference requires strict scrutiny; the gender preference requires mid-level scrutiny. *Associated General Contractors of California v. City and County of San Francisco (AGCC),* 813 F.2d 922, 928, 939 (9th Cir.1987). Although the analysis for evaluating racial and gender preferences may differ, the parties here agree that no such difference is pertinent to the decision in this case.

The question is (1) whether the program is justified as serving a compelling governmental interest, and (2) if justified, whether the program is narrowly tailored. *See AGCC* at 928, 939–40.

### 1. Justification

The *AGCC* court, following *Wygant v. Jackson Board of Education,* 476 U.S. 267, 106 S.Ct. 1842, 90 L.Ed.2d 260 (1986), held that in order for a locality to justify a racially discriminatory ordinance, it must make findings that it engaged in past discrimination. *AGCC* at 929. These parties agree that the county made no findings of its past discrimination, and the county contends that it need not do so. Defendant argues that it has a compelling interest in eliminating industry discrimination because it impliedly participates in such discrimination in awarding public contracts to members of the industry. Plaintiffs contend that this theory of implied participation cannot justify defendant's program as a matter of law and that the county failed to make those requisite findings. I agree.

The only authority defendant offers on implied participation is an Eleventh Circuit case and a case note. *South Florida Chapter of the Associated General Contractors of America, Inc. v. Metropolitan Dade County, Florida,* 723 F.2d 846 (11th Cir.1984), conflicts with *AGCC* and was decided before *Wygant.* It is not persuasive authority.

The case note is *The Non–Perpetuation of Discrimination in Public Contracting: A Justification for State and Local Minority Business Set Asides After Wygant,* 101 Harv.L.Rev. 1797 (1988). It argues that lower courts, including the *AGCC* court, have erred by reading *Wygant* too narrowly and requiring that municipalities make a showing of their past discrimination before enacting such programs. The case note conflicts with *AGCC* and is not persuasive.

*Wygant* and its progeny impose a heavy burden upon local governments by requiring proof of their own guilt, but that is the law of this Circuit. Even if findings of industry discrimination were sufficient, the county failed to make such findings.

This defendant recorded only its findings of lingering past discrimination and a review of the level of participation of minority business enterprises (MBEs) and women business enterprises (WBEs). Such finding of societal discrimination alone has been held an inadequate basis for set aside programs.

Defendant argues that its findings of discrimination in the construction industry are an adequate basis. According to defendant, it found a disparity between the percentage of minorities in the community (11%) and the percentage of county construction contracts awarded to minorities over the three fiscal years beginning in 1978 (.3% in 1978–79; .6% in 1979–80; and .9% in 1980–81). These statistics fail because defendant does not indicate that these percentages reflect the percentages of participation in the construction industry. These figures refer to all county contracts, not merely construction contracts. Affidavit of Bruce C. Hamlin, exhibit B, pages 3–4.

Also, general population statistics have limited use in discrimination analyses. *See Moore v. Hughes Helicopters, Inc.,* 708 F.2d 475, 482–83 (9th Cir.1983). This is because the appropriate comparison is between the populations of entities or persons available, capable and interested, with those who actually secured the contracts. Hence, defendant's statistics do not show significant disparity.

The state suggests another source of support for defendant's ordinance in its brief which is the amicus brief it has submitted in the *City of Richmond* case. In that case the city relied on extensive findings, including U.S. Congressional findings, to justify its affirmative action program. *See* Amicus Brief, page 4. The state argues that local governments, including defendant, should be able to rely on such congressional findings of industry discrimination. Here, however, defendant did not indicate its awareness of or reliance on such congressional findings.

I must hold defendant's voluntary affirmative action program without justification for two reasons. First, it fails to make prior findings that it discriminated against minorities and women, the requirement set forth in *AGCC.* Second, even applying the theory of implied participation in industry discrimination does not help defendant because it failed to make the requisite findings.

### 2. Narrowly Tailored

The narrowly tailored prong complements the justification prong. A program can be narrowly tailored only insofar as it remedies the discrimination from which the program draws its justification.

Here, the defendant has not made findings upholding justification and the program cannot be narrowly tailored into survival. It is worth pointing out, however, that a justified program must be narrowly tailored, including a finding that lesser restrictive alternatives were inadequate. Also, the provision for compliance by good faith efforts must set objective standards to guide implementation. Finally, such a program requires a review date whereby the local government can determine whether or not necessity compels continuance of the ordained program.

I conclude that defendant's voluntary affirmative action program is without sufficient justification and is not narrowly tailored. It violates the equal protection clause of the Fourteenth Amendment of the United States Constitution. Accordingly, I grant plaintiffs' motion for summary judgment on its first claim. I direct an order declaring the ordinance unconstitutional and enjoining implementation of programs based thereon.

### B. *Defendant's Motion to Stay*

I decline to stay this action. Even if the United States Supreme Court holds that the implied participation theory can justify such an ordinance, defendant failed to make the requisite findings. Further, should the court find that a local government may rely on and adopt congressional findings, there was no reliance or adoption

here. Finally, I am bound by the precedent of this Circuit which is, of course, firmly in place.

Plaintiffs shall prepare an order consistent herewith which shall be signed unless defendant objects within five calendar days of its submission.